IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES A. HORTON<br><br>Plaintiff,<br><br>v.<br><br>FABIAN ESPINDOLA, BENJAMIN OLSEN, D.C. SOCCER LLC D/B/A D.C. UNITED, AND MAJOR LEAGUE SOCCER, LLC<br><br>Defendants. | No.1:17-cv-1230 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, for the reasons set forth below, Defendants Major League Soccer, LLC ("MLS"), D.C. Soccer d/b/a D.C. United ("D.C. United"), and Benjamin Olsen ("Olsen"), by their undersigned attorneys, file this Notice of Removal to remove the claims against them in this action from the Superior Court of the District of Columbia, to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1367, 1441 and 1446.

Removal is made pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction. The grounds for removal are as follows:

**I.      INTRODUCTION AND BACKGROUND**

1.      On May 24, 2017, plaintiff, Charles A. Horton ("Horton" or "Plaintiff") served MLS with a Complaint (the "Complaint") filed in the Superior Court of the District of Columbia, No. 2017 CA 002046 B. Plaintiff served D.C. United and Olsen with the Complaint on May 25, 2017 and June 5, 2017, respectively. Copies of the Complaint and other documents filed in this action are annexed as Exhibit A.

2.      The Complaint alleges that Horton signed an employment contract with MLS on or about February 16, 2016, and that his rights were subsequently acquired by D.C. United, for

whom he played until being transferred to another team in May 2016. (Compl. ¶ 11, 25). The Complaint alleges that Horton and another player, Fabián Espindola ("Espindola"), got into an argument in March 29, 2016, after a meeting at D.C. United's training facility. (Compl. ¶¶ 14-15). The Complaint alleges that this argument culminated in Espindola striking Horton in the left temple with his elbow (the "March 29 incident"). (Compl. ¶¶ 14-16). The Complaint further alleges that Espindola's conduct caused Horton to immediately experience concussion symptoms. (Compl. ¶ 17). According to the Complaint, following the March 29 incident, the coaching staff dismissed Espindola from practice and asked Horton to meet with D.C. United head coach Olsen to discuss the incident. (Compl. ¶ 18). The Complaint alleges that Olsen and Horton met, and that Olsen informed Horton that he knew that Espindola had a history of aggressive conduct. (Compl. ¶ 20). The Complaint additionally alleges that Horton's concussion symptoms grew increasingly severe over time, resulting in his temporary transfer to another team and ultimate resignation. (Compl. ¶¶ 22, 25-27). The Complaint alleges that Espindola's actions on March 29 constituted assault and battery and resulted in "severe emotional and psychological distress, mental anguish and impairment, pain and suffering, and loss of quality of life." (Compl. Count I, ¶¶ 28-34, Count II, ¶¶ 35-41, Count III ¶¶ 42-45). The Complaint also alleges that Olsen and D.C. United were responsible for "overseeing and supervising the conduct" of Espindola and failed to adequately supervise him in light of their knowledge of his violence tendencies. (Compl. Count IV, ¶¶ 46-56). The Complaint alleges that this "negligent supervision" was the direct and proximate cause of Horton's physical injury, distress, and premature retirement. (Compl. Count IV, ¶¶ 46-56). The Complaint further alleges that MLS was negligent in hiring and retaining Espindola given its alleged knowledge of his violent propensities, and that this hiring and retention resulted in the March 29 incident and

Horton's damages. (Compl. Count V ¶¶ 57-67). The Complaint finally alleges that MLS and D.C. United are liable for the injuries Horton incurred from the March 29 incident under a theory of *respondeat superior*. (Compl. Count VI, ¶¶68-77).

3. MLS employed Horton and Espindola pursuant to terms and conditions of employment contained in the "Collective Bargaining Agreement Between Major League Soccer and Major League Soccer Player's Union" and several other collectively-bargained agreements between MLS and the Major League Soccer Players Union ("MLSPU") (collectively referred to hereinafter as the "CBA"). The CBA was the product of arm's-length negotiations between MLS and the MLSPU (the exclusive bargaining representative of present and future MLS players). (CBA Art. 1.1). The CBA incorporates the Standard Player Agreement ("SPA"), which governs player behavior. (CBA Art. 18, CBA Ex. 1). It also incorporates the Substance Abuse and Behavioral Health Program and Policy ("SABHPP") (CBA Art. 12.1, CBA Ex. 5). The CBA (including the SPA and SABHPP) includes, among other terms, provisions relating to player behavior, medical care, safety, discipline, and dispute resolution. The 2015 Collective Bargaining Agreement (including exhibit 1) is annexed as Exhibit B. A letter dated September 16, 2015 memorializing an agreement between MLS and MLSPU regarding personal conduct is annexed as Exhibit C.

## II. GROUNDS FOR REMOVAL

4. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because the action is one that is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States." A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim. *See Avco Corp.* v. *Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).

5. Federal question jurisdiction exists in this case based on complete preemption of plaintiff's claims against MLS, D.C. United and Olsen under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See Cefarrati v. JBG Properties, Inc.*, 75 F. Supp. 3d 58, 64 (D.D.C. 2014) ("Section 301 embodies a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts . . . Section 301, therefore, not only preempts state law but also authorizes removal of claims that purported to seek relief only under state law").

6. Section 301 of the LMRA provides that the federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985); *see also Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar. Officers*, 75 F. Supp. 3d 294, 303 (D.D.C. 2014) (holding plaintiff's state law tort claims preempted because they raised threshold questions which "necessarily would require a court to consult and interpret the text of the AFL-CIO's constitution," thereby triggering "section 301's complete preemptive effect"). Thus, Section 301 preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [collective bargaining] agreements" and also claims "substantially dependent upon analysis of the terms of [a collective-bargaining] agreement." *Allis-Chalmers*, 471 U.S. at 213, 220; *Heintzman v. Amalgamated Transit Union Int'l,* 825 F. Supp. 2d 161, 163

(D.D.C. 2011) (holding plaintiff's breach of contract claims preempted by Section 301 because it sought "to vindicate a right created by . . . an international union constitution").

7. Here, Plaintiff's claims are preempted by Section 301 because the rights Plaintiff seeks to vindicate were created by the CBA. The CBA expressly delineates the obligations of MLS with respect to both the promulgation and enforcement of rules regulating the conduct of MLS Players, among other things.

8. Plaintiff's claims also are preempted because those claims, and the scope of any duty owed by MLS, are "inextricably intertwined with consideration of the terms of [the CBA]" or "substantially dependent" on an analysis of the relevant provisions of the CBA. *Allis-Chalmers*, 471 U.S. at 213, 215, 220; *see also Berry v. Coastal Int'l Sec., Inc.*, 968 F. Supp. 2d 104, 110 (D.D.C. 2013) ("[T]he Court finds that plaintiff's age discrimination claim is preempted by section 301 because it is expressly founded upon rights created by the CBA"); *Duerson v. NFL,* No. 12 C 2513, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012) (holding that "[e]ven if the NFL's duty arises apart from the CBAs, therefore, the necessity of interpreting the CBAs to determine the standard of care still leads to preemption"); *Brown v. Keystone Consol. Indus., Inc.*, 680 F. Supp. 1212, 1218 (N.D. Ill. 1988) (holding that plaintiffs' fraudulent misrepresentation claim was preempted because "any determination of plaintiffs' claim for fraudulent misrepresentation necessarily rests on an interpretation of the terms of the [labor] agreement").

9. Adjudicating Horton's claims will hinge on interpretation of provisions of the CBA relating to player behavior, discipline, medical care, fitness to play, behavioral health, and the MLS grievance procedure. *See, e.g.*:

- CBA Art. 9.2 (Outlining Fitness to Play/Injury Guarantee)

- CBA Art. 20.1 (Establishing right of teams to impose discipline)

- CBA Art 20.2 (Governing discipline for on-field conduct and off-field conduct detrimental to MLS)

- CBA Art. 21 (Defining Grievance as "any dispute involving the interpretation or application of, or compliance with, any agreement between the Union and MLS or between a player and MLS" and providing that Grievances will be resolved exclusively in accordance with the procedure set forth in this Article, except where otherwise provided in this CBA (including the SPA)." Also outlining the Grievance and Arbitration procedure.)

- CBA Ex. 1 (Standard Player Agreement – regulating player behavior)

- CBA Ex. 5 (Substance Abuse And Behavioral Health Program And Policy – covering behavioral health issues, including anger management)

### III. CLAIMS AGAINST ESPINDOLA ARE WITHIN THIS COURT'S SUPPLEMENTAL JURISDICTION

10.  This Court should remove this case in full and exercise supplemental jurisdiction over Horton's claims against defendant Espindola. Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A federal claim and a state law claim "form part of the same Article III case or controversy if the two claims 'derive from a common nucleus of operative fact'." *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 423–24 (D.C. Cir. 2006). All claims and damages in this case derive directly from the March 29 incident. Therefore, supplemental jurisdiction is appropriate in this case.

11. Supplemental jurisdiction is also independently justified by the fact that the claims against all defendants but Espindola are plainly removable due to Section 301 preemption. In *Cefarrati*, this Court held that removal under Section 301 preemption as to one party justifies preemption as to all parties, explaining that "when at least one claim is independently removable as a Section 301 claim, even the claims not independently removable come within the supplemental jurisdiction of the district court." 75 F. Supp. 3d at 68.

## IV.  REMOVAL IS PROCEDURALLY PROPER

12. The United States District Court for the District of Columbia is the federal district in which the Superior Court of the District of Columbia —where Plaintiff filed his Complaint— is located.

13. This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

14. Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11. *See* 28 U.S.C. § 1446(a).

15. In filing this Notice of Removal, MLS, D.C. United, and Benjamin Olsen do not waive any defenses that may be available, including, without limitation, jurisdiction, venue, standing, or procedures for the disposition of this action in accordance with the terms of the CBA. Nor do the MLS, the D.C. United, or Benjamin Olsen admit any of the factual allegations

in the Complaint; rather, MLS, the D.C. United, and Benjamin Olsen expressly reserve the right to contest those allegations at the appropriate time.

16. All defendants who have been served consent to removal.

WHEREFORE, MLS, D.C. United, and Benjamin Olsen remove the above-captioned action brought against them in the Superior Court of the District of Columbia.

Dated: June 22, 2017

Respectfully submitted,

MAJOR LEAGUE SOCCER, LLC

D.C. SOCCER, LLC D/B/A D.C. UNITED

BENJAMIN OLSEN

/s/ Matthew H. Johnson
Christopher E. Hassell, Esq. 291641
Matthew H. Johnson, Esq., #502942
1233 20th Street, N.W., 8th Floor
Washington, D.C. 20036
Telephone: (202) 712-7000
chassell@bonnerkiernan.com
mjohnson@bonnerkiernan.com
*Counsel for Defendants Major League Soccer, LLC, DC Soccer, LLC and Benjamin Olsen*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing *Notice* was served electronically and/or by first class mail on this 22nd day of June, 2017 upon:

L. Palmer Foret, Esq.
Michelle A. Parfitt, Esq.
James F. Green, Esq.
Jerry Spitz, Esq.
Drew LawFramboise, Esq.
1825 K St., NW Suite 700
Washington, DC 20006
Telephone: (202) 783-6400
Fascimile:  (202) 416-6392
lpforet@ashcraftlaw.com
*Counsel for Plaintiff*

Fabian Espindola
9316 Rustic Breeze Court
BRISTOW, VA 20136
*Defendant*

/s/ Matthew H. Johnson
Matthew H. Johnson